**Walter SALAZ, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4626.**

Supreme Court of Wyoming.

March 9, 1977.

David B. Park and Ronald W. Hofer, Casper, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Frederick J. Harrison, Legal Intern, Cheyenne, for appellee.

Before GUTHRIE, C. J., McCLINTOCK, RAPER and THOMAS, JJ., and BROWN, District Judge.

BROWN, District Judge.

The appellant, Walter Salaz, was tried before a jury in the district court of Natrona County and was convicted of three counts of obtaining goods by false pretenses, in violation of § 6–38, W.S.1957. He was sentenced to serve a term in the Wyoming State Penitentiary.

During the trial of appellant, the principal witness for the prosecution was Dianna Martinez. Martinez testified that in late November of 1974 Salaz had in his possession the Albertson's credit card of James E. Déal, and that he gave the credit card to her for the purpose of making unauthorized purchases. Martinez further testified that Salaz was with her on two of the occasions when she used the credit card, that they argued over purchases to be made with the card, and that on one occasion when he was not with Martinez Salaz sent her to buy gloves for him and groceries for his sister. After the three purchases Salaz removed the credit card from Martinez' possession.

Other facts necessary in this appeal will be recited in connection with individual errors alleged by the appellant.

The appellant seeks reversal on appeal alleging two errors as follows:

(1) The defendant was prohibited from informing the jury of the witness' record of serious juvenile convictions, and that such action was the denial of the appellant's Sixth Amendment rights under the United States Constitution.

(2) That the district court erred in not granting the appellant's motion for a new trial because the appellant had met all requirements for such motion based on newly discovered evidence.

### (1) *The denial of the right of confrontation of a witness*

While Martinez was testifying, the prosecution introduced a motion in limine to prevent the defense from questioning the witness about her juvenile past. Martinez had been arrested in California at the age of 15 with two adults for three counts of robbery and one count of the sale of heroin. At that time Martinez had confessed to one count of robbery. She was placed in the custody of the California Youth Authority. Martinez never appeared before any California court, nor had she ever been represented by counsel. At the age of 18 she

was released without continuing supervision. The district court granted the State's motion in limine, consistent with the Wyoming Juvenile Court Act, §§ 14–115.39 and 14–115.40, W.S.1957, 1975 Cum.Supp.

In arguing that the appellant was denied his Sixth Amendment rights of confrontation of witnesses, appellant relies principally on the case of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis* the petitioner was convicted of grand larceny and burglary. During the trial the prosecution requested a protective order denying defense counsel the right to inquire into the juvenile record of Green, a key prosecution witness. The protective order was granted. The United States Supreme Court reversed and ruled that this denial constituted a violation of the accused's rights under the Sixth and Fourteenth Amendments.

A major factor in the high court's reversal was that Green, the key witness in *Davis,* was on probation by order of the juvenile court at the time the events to which he testified had occurred and at the time of Davis' trial. Green had been adjudicated a delinquent for burglarizing two cabins. In opposing the protective order Davis' counsel emphasized that he would not introduce Green's juvenile record to impeach Green's character as a truthful person, but only to demonstrate to the jury that at the very time Green was assisting the police in identifying the petitioner he was on probation for burglary. From this Davis would seek to show—or at least argue—that Green had acted out of fear or concern of possible jeopardy to his probation. Davis argued that Green could have made a hasty and faulty identification of petitioner to shift suspicion away from himself as the one who committed the robbery. Green also could have been subjected to undue pressure from the police to make a certain identification under fear of possible probation revocation. Davis' lawyer would reveal Green's record to probe Green for bias and prejudice and not generally to call Green's good character into question.

The key witness in *Davis* had two compelling reasons to be biased in his testimony. He was anxious to cooperate with the authorities so that he could protect his status as a probationer. He was also apprehensive about being a suspect himself if the case against petitioner did not develop or disintegrated.

The Supreme Court held in *Davis* that the State's policy of protecting the confidentiality of the juvenile offender's record must give way to a constitutional right to effective cross-examination. The Court said (415 U.S. at 320, 94 S.Ct. at 1112):

" * * * [W]e conclude that the State's desire that Green fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself.

"The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. * * * "

In his concurring opinion in *Davis,* Mr. Justice Stewart appears to have set the parameters of the majority opinion. He states (415 U.S. at 321, 94 S.Ct. at 1112):

" * * * Such cross-examination was necessary in this case in order 'to show the existence of possible bias and prejudice . . . ,' ante, at 1111. In joining the Court's opinion, I would emphasize that the Court neither holds nor suggests that the Constitution confers *a right in every case* to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." (Emphasis supplied)

The state courts that have considered *Davis* have not been in agreement as to the parameters of the majority opinion. Cf. *State v. Deffenbaugh,* 217 Kan. 469, 471, 536 P.2d 1030, 1033–1034 (1975), and *State v. Myers,* 350 A.2d 611, 612–615 (R.I.1976) (apparently construing *Davis* to apply to general impeachment of a witness' credibili-

ty), with *Commonwealth v. Ferrara,* 330 N.E.2d 837, 840–843 (Mass.1975), and *State v. Brown,* 132 N.J.Super. 584, 585–587, 334 A.2d 392, 393–394 (1975) (both interpreting *Davis* to pertain only to impeachment by showing bias or prejudice).

This court has heretofore indicated its acceptance of Justice Stewart's view of the holding in *Davis* that it was limited to the showing of bias or prejudice. *Connor v. State,* 537 P.2d 715 (Wyo.1975).

In the case at bar the witness Martinez was not on probation or parole. She was not subject to loss of freedom or other punishment due to the previous juvenile adjudication. She had no fear of revocation of probation or parole if she failed to cooperate with the police. Resultant bias or prejudice from the juvenile proceedings in California were nonexistent. In this case, as distinguished from the *Davis* case, the witness Martinez was not apprehensive about being prosecuted in connection with illegal use of the credit cards. Prior to the trial of defendant Salaz there were several charges, including three counts of illegal use of the credit card, pending against Martinez. It was brought out in examination at the trial that she had pleaded guilty to forgery and one count of possession of a controlled substance. In exchange for her pleas of guilty the other charges were dismissed, including the three counts alleging the illegal use of the credit cards, prior to the Salaz trial. She was not under a threat of further prosecution when she testified.

In Salaz' trial, as distinguished from the *Davis* case, extensive evidence relevant to the question of bias and prejudice of a key witness was admitted by the court. Under direct examination the jury learned that Martinez had pleaded guilty to one count of forgery. Through forgery she had supported Salaz' use of drugs and in the terminology of the street she had been his "old lady." In cross-examination defense counsel probed deeply into every possible motivation behind Martinez' testimony. Martinez admitted jealousy of Shirley Goddard, the appellant's other girl friend. Martinez stated that she believed appellant had "squealed" on her and that he had been responsible for her arrest. Repeated defense questioning revealed that Martinez had had intercourse with appellant and at the time of her arrest Martinez was pregnant with Salaz' baby. While in jail she suffered a miscarriage. Defense counsel determined in cross-examination that Martinez had had extensive experience with drugs, that her only child was presently in the custody of her estranged husband, and that the child had not always received adequate care or nourishment from Martinez. In cross-examination defense counsel again brought to the attention of the jury that Martinez had pleaded guilty to forgery and that she had been granted immunity from further prosecution in exchange for her testimony.

Direct and cross examination clearly established Martinez' possible bias and prejudice against appellant and generally demonstrated her unsavory character. Voluminous evidence was presented to the jurors from which they may have concluded that the witness Martinez was biased and prejudiced against the defendant. The introduction of Martinez' prior juvenile record in California could have contributed little or nothing to the evidence produced at Salaz' trial as to her bad character and at best was cumulative. The proceedings in California would show nothing affecting Martinez' prejudice or bias. Accordingly, Salaz was not denied his Sixth Amendment right to confront a witness.

If, arguendo, we were to view the refusal of the trial court to allow examination of the witness on serious juvenile violations as error, because of the far-reaching nature of the cross-examination which did reveal many reasons for bias and prejudice, we would not deem it prejudicial error. *Heberling v. State,* 507 P.2d 1 (Wyo.1973).

(2) *The denial of a motion for a new trial*

At the conclusion of the trial and after the verdict the defense submitted for the district court's consideration a motion for a new trial and subsequently an amended motion requesting such action primarily on the

grounds of newly discovered evidence. In support of the motion for a new trial the defendant filed affidavits by Greg Moore, by Donald L. Painter, attorney for the defendant, and by the defendant. The affidavits indicate generally the efforts made by defendant to locate Moore, a potential witness. They state that Moore was not in Wyoming for several months prior to the trial but that he had been located finally after the trial. Moore's affidavit states that if he were called as a witness he would testify (1) that defendant Salaz refused to go to the Albertson store when Martinez asked him to go use the credit card; (2) that he did not want anyone else to use it; and (3) that Salaz was not present at the downtown Albertson's store on November 30, 1974, one of the times when it was alleged that he was present and participating in the use of the credit card. The remainder of Moore's affidavit contradicts the close relationship between Martinez and defendant as testified to by Martinez.

■ Both the appellant and the State recognize that the grounds for obtaining a new trial based on newly discovered evidence are set out in *Opie v. State,* 422 P.2d 84 (Wyo.1967). These grounds are: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict if the new trial were granted; and (4) that it is not cumulative, viz, speaking to facts in relation to which there was evidence at the trial. *Opie v. State,* 422 P.2d at 85.

■ The defendant has totally failed to demonstrate to the court that he has met the first requirement in *Opie.* Salaz had knowledge of Greg Moore's existence and of the facts to which Moore could testify prior to the accused's trial. Salaz' claim for a new trial cannot therefore be based on the finding of new evidence; all he can assert actually is the finding of a witness after trial rather than before. A new trial will not be granted when the evidence alleged as "new" simply constituted conversations

in the accused's presence in which he took part. 24 C.J.S. Criminal Law § 1454 notes 22–24, p. 180.

Those conversations included relevant facts regarding the accused's participation in and presence during the credit transactions. Greg Moore's testimony could have presented evidence on those facts. But the accused has not demonstrated that he exercised due diligence in locating Greg Moore prior to or during the trial. Greg Moore's affidavit even states that he had a brother, David, living in Casper who knew his whereabouts the month of the trial. Yet there is no showing that Salaz contacted or tried to contact David Moore.

Furthermore, Greg Moore's affidavit indicates that he had had contact with the Casper Police Department early in 1975. Yet Salaz has not demonstrated to our satisfaction that he made any attempt to locate Moore through the Casper police.

In addition, Salaz ignored the one route most available to him if, indeed, his diligence had failed to locate a material witness. He never requested a continuance asking additional time in which to find Greg Moore.

■ Defendant's motion for a new trial, therefore, is based on a misunderstanding of the meaning of newly discovered evidence. Critical to the concept of newly discovered evidence is that the defendant had no knowledge of the new and material facts either prior to or during his trial. If the accused knew of the evidence prior to trial, it was his duty to produce that testimony at the trial or at least show that after due diligence the witness could not be found. Evidence is not newly discovered when it was known to the defendant or could have been known in the exercise of due diligence, and such evidence is not sufficient to grant a new trial. *United States v. Bujese,* 371 F.2d 120, 122 (3 Cir. 1967).

The defendant did not cause to be issued a subpoena for Moore's appearances at his trial—nor did defendant request a continuance asking additional time to locate Moore. The affidavits designed to show difficulty

encountered in locating Greg Moore are really matters to be presented in support of a motion for a continuance rather than for a new trial.

■ Where a motion for a new trial is made on the ground of newly discovered evidence the burden is on the moving party to prove that it was discovered since the trial and that he was free from fault or lack of due diligence in failing to discover, before or during the trial, the newly discovered evidence upon which he relies. 66 C.J.S. New Trial § 198 notes 58 and 59, p. 481; 58 Am.Jur.2d, New Trial, § 164, note 4, p. 375.

The defendant has failed to meet this burden.

■ Greg Moore's affidavit further generally contradicts Martinez' testimony and alludes to facts which impeach her credibility. The Wyoming Supreme Court has previously held that a new trial will not be granted on grounds of newly discovered evidence where the evidence is to impeach a witness. *John B. Roden, Jr., Inc. v. Davis,* 460 P.2d 209 (Wyo.1969). New evidence which only impeaches a witness or contradicts evidence produced at the trial is not sufficient to grant a new trial.

■ Finally, appellant totally ignores the discretion accorded a trial judge in granting a new trial. *Opie* emphasized this discretion. The trial judge's decision to refuse a new trial is reviewable only where the judge has abused his discretion. *Opie v. State,* 422 P.2d at 85. Nothing in appellant's brief or in oral argument suggests that the trial judge abused his discretion.

■ In appellant's amended motion for a new trial he alleges other errors as follows:

1. The court failed to give an instruction regarding circumstantial evidence.

2. The court permitted the State to amend its information.

3. The court did not require the State to elect a theory upon which to prosecute appellant.

4. The accumulative effect of alleged errors.

Neither in appellant's brief to this court nor in oral argument did he address himself to the alleged errors set out immediately above. Accordingly, we will not consider these matters on appeal. *Buckles v. State,* 500 P.2d 518 (Wyo.1972); *Lujan v. State,* 423 P.2d 388 (Wyo.1967). It does not appear that such alleged errors, if in fact there are errors, are fundamental errors requiring reversal.

Affirmed.