Larry HERNANDEZ, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4842.

Supreme Court of Wyoming.

Dec. 13, 1978.

Wyatt R. Skaggs, Casper, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Appellant seeks reversal of his conviction of the crime of possession with intent to deliver a controlled substance, being marijuana, in violation of the statute.[1] After argument, this case was remanded to the district court for the sole purpose of holding "a full evidentiary hearing immediately to determine whether such statement was voluntarily made and is properly receivable in evidence," *Hernandez v. State*, Wyo., 577 P.2d 643, 644. This court retained jurisdiction for all other purposes and for ultimate disposal.

___

1. §§ 35–347.14(d)(10) and 35.347.31(a)(ii), W.S.1957, 1975 Cum.Supp. (now §§ 35–7–1014(d)(x) and 35–7–1031(a)(ii), W.S.1977).

The district court has complied with that order, and after hearing has returned to this court its decision and findings in the following words:

"The statement in question was voluntarily made and is properly receivable in evidence. The Court finds these facts by a preponderance of evidence: Defendant made the statement attributed to him that the marijuana and stuff on the nightstand was his but the other stuff was not his; Defendant was not then significantly under influence of drugs; the officers had entered the motel room, Defendant having admitted them, with drawn guns and Defendant was in their custody and not free to leave; Defendant's statement was spontaneous and not in response to questioning, threat, coercion or promise; Defendant was informed of his *Miranda* rights by the officers and responded that he understood them; Defendant did not ask for a lawyer nor express any desire to cease talking. The Court makes these conclusions of law: Defendant's statement was voluntary, was not induced by any act of the officers, and is admissible at trial; Defendant's constitutional rights were not violated by the taking of the statement and its being admitted into evidence; Defendant had then made a knowing and intelligent waiver of his Fifth Amendment rights."

There is also filed therewith a transcript of the evidence presented at the hearing, and upon which this holding was made. The record is now in such condition that final disposal may be made of this appeal.

We must first examine these proceedings and the evidence adduced at such hearing to determine if said findings and conclusions are sustained by the evidence and whether the State has sustained the burden of demonstrating the voluntariness of said admission or statement, *Dodge v. State,* Wyo., 562 P.2d 303, 308. It is our view that the evidence herein sustains the finding of the trial court which was made at this hearing and which was required by our earlier order.

The facts are in little question here, and only in certain areas is there even any suggested dispute. Defendant was arrested in a motel room, which he was sharing with a woman and a small child, by officers of the Casper Police Department and the Natrona County Sheriff's office. This arrest was made for an armed robbery, committed earlier in the day.[2] As the officers came to the door to enter, the door was opened by defendant, who had heard them and who stood facing the officers with a knife in his hand. The officers stepped into the room, and Officer Hedstrom ordered him to "freeze" and he dropped his knife and stood silent. The officer put defendant against the wall and placed handcuffs on him. Immediately thereafter defendant and the woman in the room were advised of their so-called *Miranda* rights, which were read by the officer from a card which is placed here in evidence. Defendant was asked if he understood these rights and he answered that he did. The record shows that defendant admitted the reading of these rights and that he did reply in this manner. From where he stood, Hedstrom could see upon a nightstand what appeared to be marijuana and hashish, along with some smoking paraphernalia. At the time this warning was given and at its conclusion, and after his statement that he understood his rights, he told Hedstrom, "the marijuana and stuff on the nightstand is mine." It is Hedstrom's testimony repeating this statement about which this controversy swirls. Hedstrom denied that he ever at any time asked defendant any question about these articles and defendant agrees. About the only difference in the facts as testified to by defendant is that he did not remember making the statement and that he asked to see a lawyer, and that because he had ingested certain narcotics he apparently does not remember anything else that happened at that time.

---

2. Although the charge was later dismissed, no question has been raised as to the probable cause therefor or legality of this arrest.

The disposition of this matter might be placed solely upon the basis of the finding of the trial court that defendant's statement was spontaneous and "not in response to questioning, threat, coercion or promise." There is a passage in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, rehearing denied *California v. Stewart*, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121, removing such statement from the area of constitutional violation, which is as follows:

"* * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

See also *State v. Landrum*, 112 Ariz. 555, 544 P.2d 664, 668, and *Howard v. People*, 173 Colo. 209, 477 P.2d 378, 379; cf., *Dodge v. State*, Wyo., supra.

However, because defendant, in his testimony, suggests that he was under the influence of narcotics at the time of the occurrence, we are called upon to determine if this may have affected his "grasp of reality so the voluntariness may be determined," *Lonquest v. State*, Wyo., 495 P.2d 575, 581; and for the basic reason of determining the competency of such statement under the conditions in which it was made. We cite this because the rules governing the admissibility of statements made under the influence of either liquor or drugs are substantially the same, *State v. Brady*, 105 Ariz. 592, 469 P.2d 77, 81; *Dempsey v. State*, 277 Md. 134, 355 A.2d 455, 464; *State v. Smith*, 15 Wash.App. 103, 547 P.2d 299, 302, certiorari denied 429 U.S. 1065, 97 S.Ct. 794, 50 L.Ed.2d 783; 3 Wharton's Criminal Evidence, § 689, p. 481 (13th Ed.Torcia). The clear implication from defendant's testimony is that he was so much under the influence of narcotics that he could not understand the *Miranda* warning and was unable to recall anything thereafter. This must be considered both as to the question of voluntariness and the particular competence to make such admissions on the part of defendant. The finding of the trial court that defendant "made a knowing and intelligent waiver" is, however, fully sustained by the evidence. Defendant's claims

that he had taken Methamphetamine ("Speed") intravenously about an hour prior to this incident, that he was "pretty high," and that he had smoked "Pot" on the day of the arrest, are met with the testimony of the two experienced police officers that his speech was coherent and that he was functioning normally and did not appear to be either intoxicated or under the influence of a drug. We cannot disturb the trial court's factual disposal in this case. There is no rule that the ingestion of drugs makes confessions inadmissible per se, *United States v. Arcediano*, D.C.N.J., 371 F.Supp. 457, 466, and numerous citations thereunder; *People v. Townsend*, 11 Ill.2d 30, 141 N.E.2d 729, 736, 69 A.L.R.2d 371, certiorari denied 355 U.S. 850, 78 S.Ct. 76, 2 L.Ed.2d 60, rehearing denied 355 U.S. 886, 78 S.Ct. 152, 2 L.Ed.2d 116, certiorari denied 358 U.S. 887, 79 S.Ct. 128, 3 L.Ed.2d 115; *State v. Rank*, Iowa, 214 N.W.2d 136, 139; 3 Wharton's Criminal Evidence, supra.

Appellant asserts that the trial court erred in not allowing cross-examination of the witness Lynch involving his juvenile record. This claim of error is based upon *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, and *Salaz v. State*, Wyo., 561 P.2d 238. During the cross-examination of the witness Lynch it was developed that prior to November 1, 1975, the date upon which this charge is laid, he had been arrested on October 28 for possession of "hash" and that he had been arrested once since that date. He admitted he had engaged in drug dealing at a time prior to October 27. When counsel attempted to inquire if he was convicted of the possession charge, upon objection by the State the court expressed its belief that inquiry could not be made about misdemeanor convictions. It was during this colloquy that defendant's counsel stated he wanted to see if the witness was receiving any other special favors besides immunity. The judge then advised counsel that he might make such inquiry and the following questions were propounded, with the answers as set out:

"Q. Has the State granted you any more favors other than the promise of immunity which the judge granted you?

"A. No.

"Q. You never had any other breaks from the state never?

"A. Never."

At this juncture, without further questions, but in apparent anticipation of the court's ruling, he made the following offer of proof:

"I would propose to offer, Your Honor, as an offer of proof that the witness just recently pleaded out to a possession charge, and he was granted the favor of having it removed into juvenile court, where he is serving more or less unsupervised probation. Now, I think under the terms of *Salaz versus State*, the recent case, *Walter Salaz versus State*, I can inquire into this line of evidence, it is my only impeachment route, *Salaz* was distinguished by other impeachment but here my impeachment route is inquiring into favors, one of the major points is having the last possession charge transferred into juvenile court, particularly in view of the prior record. So I think I can inquire into this particularly since he has said he has received no other favors from the State. * * *"

During the discussion in connection with this offer we find the unchallenged statement of the prosecuting attorney that "* * * this occurred much prior to any granting of immunity and had nothing to do with his testimony today." The judge then refused the offer, ruling the juvenile record was confidential and he would not permit its breach by the defendant. Both *Davis* and *Salaz* recognize that in certain factual situations it is permissible to inquire into the juvenile record of a witness in face of the statute making these records confidential. However, the scope of this inquiry must be limited to facts tending to disclose interest, bias or prejudice and not impeachment by contradictory testimony, *Salaz v. State*, supra, at 241.

Appellant's counsel here demonstrates his desire to go beyond this limit and seeks actually to impeach the testimony of the witness based upon his statement that he had been granted no other favors. The testimony which Lynch gave about the purchase of hashish from this defendant some three days before the time of the offense, upon which this prosecution was based, was offered for the purpose of showing defendant's possession was with the intent to deliver such controlled substance. Defendant fails to show, either in his offer of proof or his brief, that there was any relationship between the disposal of the charge and the suggested action in the juvenile court and this witness's appearance and testimony in this case.

Appellant has complained he had no other route to attack this witness's credibility. The grant of immunity, the admitted earlier drug dealings of this defendant, and his arrest therefor, certainly did not enhance the witness's credibility.

■ Absent reliance upon the confidentiality provision for juvenile proceedings, this refusal by the trial court to allow counsel to proceed with the examination would not have been such abuse of discretion that would have required reversal because after development of the clear fact that the witness has an interest which affects his credibility, the scope of the cross-examination of such witnesses is largely within the discretion of the trial court, *Jackson v. State*, 272 Ala. 566, 133 So.2d 210, 211; *State v. London*, 131 Mont. 410, 310 P.2d 571, 583; *Commonwealth v. D'Agostino* 344 Mass. 276, 182 N.E.2d 133, 136, certiorari denied 371 U.S. 852, 83 S.Ct. 90, 9 L.Ed.2d 86.[3]

The judgment should therefore be affirmed.

---

**3.** Although tried before the adoption of Wyoming Rules of Evidence, we find Rule 609(d) to be of interest in its application to testimony of juvenile adjudications.