Charles SIEGERT, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5485.

Supreme Court of Wyoming.

Sept. 30, 1981.

Michael H. Schilling, Appellate Counsel, Wyoming Public Defender Program, and Paul H. Byrtus, Legal Intern, Wyoming Public Defender Program, Laramie, signed the brief on behalf of appellant. Schilling appeared in oral argument.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Senior Asst. Atty. Gen.; and Dennis C. Cook Legal Intern, Cheyenne, signed the brief on behalf of appellee. Cook appeared in oral argument on behalf of appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellant was convicted of delivering a controlled substance (marijuana), in violation of § 35–7–1031(a)(ii), W.S.1977, following a jury trial in the Natrona County District Court. The issue on appeal is whether the district judge abused his discretion in denying appellant's motions for a continuance and appellant's motion for a new trial. We affirm.

On August 27, 1980, appellant's case was set for trial. The date designated was December 1, 1980 at 10:00 a. m. The jury for appellant's case was selected in the afternoon of December 15, 1980, and the actual trial began December 16, 1980, at 10:00 a. m.[1]

On September 22, 1980, appellant filed a "Motion for Discovery and Inspection, Motion for Issuance of Subpoena Duces Tecum, and Motion for Exculpatory Material and Information." The motions recited that they were filed "pursuant to Rules 18 and 20 of the Wyoming Rules of Criminal Procedure, * * *."[2] No order issued from appellant's motions nor was any hearing held or requested.

On the first day of the trial (December 15, 1980) appellant made a motion for "a continuance or dismissal." Appellant alleged in the motion that he did not have the name and address of a State's witness, and that time was needed to interview this witness. The court denied the motion to dismiss, but granted a brief continuance and directed the State to furnish the information and materials requested by appellant. The State complied with this order, which included providing the name and address of Juanita Roberts, a State witness. The jury

was later impanelled and sworn in on the afternoon of December 15, 1980.

After opening statements made on the morning of December 16, appellant again moved the court for dismissal or continuance. Appellant asserted that he had had only fifteen minutes to interview State's witness, Juanita Roberts, and that he had not had adequate time to prepare to meet her testimony.[3]

The Motion for Dismissal or Continuance was denied. A third motion for a continuance was made and denied before Juanita Roberts testified. The trial then proceeded and appellant was found guilty as charged.

After conviction appellant made a motion for a new trial under Rule 34, W.R.Cr.P.[4] on the grounds of newly discovered evidence. This motion was denied. Judgment and Sentence was entered February 11, 1981, and appellant filed notice of appeal.

■ In determining whether there has been an abuse of discretion in denying a motion for a continuance or a motion for a new trial, the Court will consider the facts and circumstances of each individual case. Because the facts and circumstances of each case are different, prior cases alone may not be relied upon as a binding precedent. It will be necessary, therefore, to apply general principles established in prior cases to the facts and circumstances of this case.

## I

■ The matter of a motion for continuance has been considered by this Court and some basic principles have been established. In *Irvin v. State*, Wyo., 584 P.2d 1068, 1073 (1978), we stated:

1. The record on appeal does not disclose any order changing the date of trial from December 1, 1980, to December 15, 1980. Apparently, there is no significance to this change in date. All concerned knew that the trial date was December 15, 1980. None of the issues concern a change in trial date.

2. Rule 18, W.R.Cr.P., "Discovery and Inspection." Rule 20, W.R.Cr.P., "Subpoena."

3. Apparently Juanita Roberts was not scheduled to appear in court until December 16,

1980, and did not arrive in Casper, Wyoming, until the morning of the 16th. Appellant's counsel, therefore, was able to interview Roberts for the first time on December 16, 1980.

4. "The court on motion of defendant may grant a new trial to him if required in the interests of justice. * * * A motion for new trial based on the ground of newly discovered evidence may be made only before or within two (2) years after final judgment * * *."

"From the time that this Court first considered the matter in *Robinson v. State*, 18 Wyo. 216, 106 P. 24 (1910), until now this Court has followed the rule that a motion for continuance based upon the necessity for additional trial preparation is addressed to the sound discretion of the trial court, the exercise of which is subject to review but only for abuse of discretion. * * * The determination as to whether there has been an abuse of discretion is going to depend upon the facts and circumstances of each individual case. * * * "

" * * * The Sixth amendment right to cross-examination is not violated merely because a counsel is surprised by the testimony of an adverse witness. * * * " *Fitzgerald v. State*, Wyo., 601 P.2d 1015 (1979).

The basic problem in this case surfaced for the first time on the first day of trial. Appellant was surprised that the case was tried on the day set for trial. He had been monitoring the court's trial docket and concluded that the judge would not get to the case at bar on the day set for trial. Appellant was not drawn "off side" by anything the court did or said; he just made a wrong guess. Because appellant was surprised he requested a continuance and for the first time complained that he had not been furnished the information and materials requested in his discovery motion filed September 22, 1980.

Appellant admitted that he had not brought the motion to the attention of the court nor called it up for hearing. Appellant further admitted that he had not pressed his discovery motion because of the standard practice of the county attorney's office of opening its files and giving requested information to defense counsel.[5] Also, defense counsel did not think he would be going to trial for another month. As far as the record reveals, after filing his discovery motion, appellant did not do anything about discovery until the day of the trial. Appellant apparently did not examine the files in the prosecutor's office, nor was he denied an opportunity to do so.

Appellant's only complaint is that he did not have the name and address of State's witness Juanita Roberts until the day of trial. Appellant has not demonstrated that he was prejudiced because his motion for a continuance was denied. Defense counsel in fact interviewed Juanita Roberts, albeit a short interview. Defense counsel requested further continuance, but was unable to tell the court what he expected to accomplish by further delay. Counsel in effect told the court in a general way that if he had more time, he might come up with some helpful information.

In appellant's first motion for a new trial filed December 19, 1980, he complained again about the court's denial of his motions for a continuance. Even at this late date, however, after interviewing and cross-examining Juanita Roberts and participating in the entire trial, appellant was still unable to state to the court what he expected to develop or accomplish if the case had been continued, except that he might have been able to do a better job.

In support of appellant's position that failure to grant a continuance was reversible error, appellant cites *Jackson v. State*, Wyo., 522 P.2d 1286 (1974). In that case the trial court failed to grant an order requiring the State to produce the name and address of one of its witnesses. Further, in the *Jackson* case, the prosecution apparently misled the trial court by insisting that such witness was an informer, when in fact he was a "quasi police officer—participating witness." *Jackson v. State*, supra, at 1287. The court found in *Jackson* that the defense of entrapment was a "distinct possibility" and that the inability of the defense to discover the name and address of a State's witness hindered him in developing that defense.

5. Many prosecutor's offices have an "open file policy." The details of these policies differ from office to office. Generally, the policy contemplates that defense counsel can examine and copy anything in the prosecution files. This policy saves court time, is useful to the State, and is useful and advantageous to the defense.

This case is distinguishable from *Jackson v. State*, supra. Here there was no misconduct of the prosecution nor was the appellant denied discovery. Further, appellant did interview the witness, but has never suggested any possible defense or any other matter that might have changed the trial result if he had been able to interview the witness at an earlier time.

Appellant seeks comfort in the dissent in *Hayes v. State*, Wyo., 599 P.2d 558, 566 (1979). The dissent in *Hayes* was concerned that defense counsel, through no fault of his own, was denied an opportunity for "effective" cross-examination of a crucial expert witness.

In *Hayes v. State*, supra, the crucial expert witness for the State was a psychiatrist. In this case Juanita Roberts was not an expert nor was her testimony crucial. Her testimony was generally corroborative of the testimony of the State's key witness, Linda Harris. Further, appellant did have an opportunity to prepare for cross-examination by interviewing Juanita Roberts. Although the interview was brief, we must assume that counsel would not require as much time to interview a nonexpert witness whose testimony was generally corroborative of other testimony as he would require to prepare to cross-examine an expert witness, such as a psychiatrist as in the *Hayes* case.

Other cases cited by appellant in support of his contention that it was reversible error to deny motions for a continuance are distinguishable in that in those other cases there was generally a denial or withholding of information from the defendant or fault on the part of the State, all of which resulted in surprise. Here appellant was denied nothing, and the only fault was appellant's lack of diligence.

## II

Appellant filed a motion for a new trial on December 19, 1980, and among other matters alleged that it was error for the court to deny a continuance of the trial. Apparently this motion was abandoned. So far as we know, no hearing was ever held on the motion, no order was issued, and the motion is not addressed in appellant's brief to this court.

On January 19, 1981, appellant filed a second motion for a new trial, alleging newly discovered evidence. It is the trial court's denial of this latter motion that we are concerned with in this appeal.

The general rule governing motions for a new trial on the basis of newly discovered evidence is set forth in *Opie v. State*, Wyo., 422 P.2d 84, 85 (1967). In that case, we stated that evidence supporting a motion for a new trial must satisfy the court on four matters:

"(1) That the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative, viz., speaking to facts in relation to which there was evidence at the trial. [Citations.]"

In *Opie v. State*, supra, we restated our position that "it is within the sound discretion of the trial court to grant or refuse a motion for new trial based upon the discovery of new evidence," and that a court's action on a motion for new trial can be challenged only for an abuse of its discretion. *Opie v. State*, supra, at 85.

Our question here, as in *Opie v. State*, supra, "is not whether the district court would have been justified in granting a new trial, but whether it was erroneous for it not to grant a new trial."

Appellant filed the affidavits of Ronald and Kathy Miller to support his motion for a new trial. The Millers had some contact with the parties alleged to have been involved in the transaction of June 17, 1980 (the date charged in the information on which marijuana was delivered), including contact with appellant and with the State's key witness, Linda Harris aka Diane. According to these affidavits it was "the guy from Texas" and not appellant who was arranging to sell the marijuana.

The trial court followed the rules set out in *Opie v. State*, supra, at 85, and decided that appellant failed to satisfy at least the first two requirements in that:

"The evidence did not come to defendant's knowledge *since* the trial, except perhaps in detail, and there was a want of adequate diligence on the part of defense.

"It appears that defense could have done any of several things either to preserve the Miller testimony before the Millers left this community, to demonstrate the essentiality of their testimony as a basis for obtaining delay of trial, or three, to locate the Millers (though the Court recognizes a substantial effort made in this direction.)"

The trial court was justified in concluding that appellant had not complied with the requirements of *Opie v. State*, supra. Appellant was well acquainted with Mr. and Mrs. Miller. He had tatooed Mr. Miller three times, and had had dinner at his house "quite a few times." Appellant testified that Mr. Miller was present at the time of the marijuana transaction. Prior to appellant's preliminary hearing on August 26, 1980, he told his attorney that the Millers were connected with the case and would testify on his behalf. Appellant knew that the Millers were going to leave Casper sometime in mid-September, 1980.

A private investigator was employed by the defense to locate the Millers, and she tried to find them at their former address. This effort was made after appellant knew that the Millers had left town. We are not aware of any effort made by appellant to see if the Millers had left a forwarding address.

In support of his motion for a new trial, appellant cites *Salaz v. State*, Wyo., 561 P.2d 238 (1977) as follows:

" * * * Critical to the concept of newly discovered evidence is that the defendant had no knowledge of the new and material facts either prior to or during his trial. If the accused knew of the evidence prior to trial, it was his duty to produce that testimony at the trial or at least show

that after due diligence the witness could not be found. * * * "

Appellant recognizes that *Salaz v. State*, supra, is "in some ways similar" to this case. While the specific acts of diligence or lack of diligence are different in *Salaz*, we believe the two cases to be substantially the same.

In *Salaz* the motion for a new trial was denied because:

(1) Salaz knew the identity of the missing witness and the substance of his proposed testimony prior to trial.

(2) Salaz failed to demonstrate to the court due diligence in locating the witness prior to or during the trial.

(3) Salaz never requested a continuance asking for more time to find the witness.

(4) In *Salaz* no subpoena was issued for the missing witness.

All the deficiencies in the new trial request in *Salaz v. State*, supra, are present here. Appellant knew the Millers' identity and their proposed testimony several months before trial. He knew they were leaving Casper in mid-September, but made no effort to preserve their testimony or secure by subpoena their presence at trial.

Appellant did not advise the court that he was having a problem finding the Millers and request a continuance. Appellant concluded in his argument to this Court that asking for a continuance would have been an exercise in futility. That conclusion may have been a result of his experience in trying to get a continuance to further interview Juanita Roberts, but the conclusion is unwarranted as the two situations are entirely different. Appellant knew at least two months before trial that the Millers would be unavailable. Had appellant asked for a continuance several weeks before trial, it would have been more convenient for the trial judge to adjust his trial docket and accommodate appellant and allow him to locate the Millers than it was on the day of trial when appellant asked for the continuance to interview Juanita Roberts.

■ In any event, the testimony by the Millers would be cumulative of appellant's

testimony or contradictory to State's witnesses. This type of "new evidence" is not sufficient to justify granting a new trial. *Salaz v. State,* supra, at 243.

What we said in *Salaz* regarding the burden of proof applies to appellant in this case:

"Where a motion for a new trial is made on the ground of newly discovered evidence the burden is on the moving party to prove that it was discovered since the trial and that he was free from fault or lack of due diligence in failing to discover, before or during the trial, the newly discovered evidence upon which he relies. 66 C.J.S. New Trial § 198 notes 58 and 59, p. 481; 58 Am.Jur.2d, New Trial, § 164, note 4, p. 375." *Salaz v. State,* supra, at 243.

The defendant has failed to meet that burden.

■ Finally, appellant totally ignores the discretion accorded a trial court in granting a new trial. *Opie v. State,* supra, emphasized this discretion. The trial court's decision to refuse a new trial is reviewable only where the judge abused his discretion. *Opie v. State,* supra, at 85. Nothing in appellant's brief or in oral argument suggests that the trial judge abused his discretion.

We conclude, therefore, that the trial judge did not abuse his discretion when he denied motions for a continuance during the trial, nor did he abuse his discretion when he denied a motion for a new trial.

Affirmed.