Victor A. LANSING, Sr., Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–15.

Supreme Court of Wyoming.

Sept. 22, 1983.

924

Cary R. Alburn, III, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., Patrick R. Day, Legal Intern, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant was convicted by a jury of possessing a firearm with intent to unlawfully threaten the life or physical well-being of a police officer. He was thereafter placed on conditional probation.

Appellant lists the issues on appeal:

"1. Did the trial court abuse its discretion by refusing to admit appellant's Exhibits C, D and E?

"2. Did the trial court abuse its discretion by denying appellant's motion to have the jury view appellant's premises?

"3. Did the trial court abuse its discretion by denying appellant's motion for a new trial?

"4. Did the trial court abuse its discretion by requiring appellant to abstain from alcohol and obey minor traffic laws as conditions of probation?"

On July 3, 1982, after drinking copious quantities of spirits, appellant struck his helpmate in the face. The police became aware that there was trouble at the Lansing home as a result of a telephone call from appellant's wife. The police responded to the call and, at appellant's request, temporarily removed him from the home.

The next day appellant made a round-trip to Encampment. During this trip he continued to joust with "Johnny Barleycorn," as was his wont to do. After returning home, appellant precipitously heaved the dinner prepared by his wife out the front door and hied to his bedroom. He thereupon procured a shotgun and proceeded to load it with ammunition. His son saw him loading the gun and conveyed this intelligence to his mother. Appellant's wife became alarmed and went with her son to the Rawlins police department.

In response to Mrs. Lansing's report, officers Rockwood and Henderson went to appellant's house. Henderson cautiously went upon the porch while Rockwood covered him from off the porch. Henderson knocked on the screen door several times. He heard appellant's voice inside the house. Although it was difficult to see through the screen door, the officer eventually saw appellant with a gun in his hand standing in the living room several feet from the front door. For several minutes Henderson talked to appellant and repeatedly asked him to put the gun down. During this time appellant brought his gun up about three times and each time officer Henderson was able to prevail upon him to put the gun down. Appellant eventually set the gun on the floor and turned away from the door, at which time Henderson entered the house, and layed hands on appellant.

In two counts, appellant was charged with possession of a dangerous weapon with intent to unlawfully threaten the life or physical well-being of another, a violation of § 6–11–101, W.S.1977, (Cum.Supp.1981).[1] Appellant was acquitted on count one which had charged possession of a weapon with intent to threaten his wife and was convicted of possession of a weapon with intent to threaten officer Henderson.

I

■ Appellant's first assignment of error is the trial court's refusal to admit three photographs of his front screen door. Admission of photographs into evidence is within the sound discretion of the trial court. Absent a clear abuse of discretion, the appellate court will not reverse the trial court's ruling on the admission of photographic evidence. *Shaffer v. State*, Wyo., 640 P.2d 88 (1982). A photograph must correctly portray the subject matter. The trial court must exercise care by refusing to admit a photograph if it can reasonably be said to be misleading or confusing to the jury or prejudicial to the objecting party. *Reeder v. State*, Wyo., 515 P.2d 969 (1973).

■ Appellant contends that three photographs of the screen door, taken from various distances, demonstrate that officer Henderson could not have seen through the door and observe appellant with a shot gun. The photograph taken closest to the screen door was taken two feet away; however, the State's evidence was that Officer Henderson stood six to eight inches from the door when he saw appellant with the gun. Since appellant conceded that visibility through the screen door improved as a person moved from two feet away to six to eight inches, the photographs offered by appellant did not accurately depict what officer Henderson would have been able to see. We have examined the photographs of what appellant says is his screen door; we cannot even tell that the exhibits are photographs of a door. Since this would have been confusing and misleading, the trial court properly refused to admit into evidence the photographs that appellant said were of his screen door. There is no merit to appellant's first assignment of error.

1. This section now renumbered § 6–8–103, W.S.1977 (June 1983 replacement).

## II

Appellant assigns as error the denial of his request that the jury be permitted to view his home. Section 7–11–204, W.S. 1977, provides for a viewing of the crime scene by the jury in certain circumstances:

"Whenever, in the opinion of the court, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body under the charge of the sheriff, to the place which shall be shown to them by some disinterested person appointed by the court. * * * "

We have not heretofore had an occasion to consider when "it is proper" to allow the jury to view the crime scene, but the purpose of a jury view is to help it understand and comprehend the evidence which has already been presented and not to take new evidence. *State v. Fricks,* 91 Wash.2d 391, 588 P.2d 1328 (1979). This was not a proper case for a jury view since there was conflicting testimony. Appellant admitted that if officer Henderson were standing where he said he was (six to eight inches from the screen door), the officer quite possibly could have seen him. Appellant contended that he was not in the living room near the screen door, but rather that he was between the kitchen and living room some distance from the door. Appellant was not really disputing the officer's ability to see through the screen, but rather appellant argued that he was not where the officer said he was, but was further away from the screen door.

A view of the premises would not have assisted the jury in resolving this conflicting testimony. The decision whether or not to allow the jury to view the scene is within the sound discretion of the trial court. *People v. Favors,* 192 Colo. 136, 556 P.2d 72 (1976). The court properly denied the request to view the crime scene.

## III

After appellant was convicted he moved for a new trial alleging he had discovered new evidence. He claims that it was only after his trial that he learned there were other people in the vicinity of the Lansing home at the time of the incident for which he was arrested. Appellant maintains that these witnesses' sworn statements attached to the motion for a new trial, "corroborated appellant's version of the incident, in opposition of the version of the officer's."

According to Bimbo Garcia, on July 4, 1982, there were ten or eleven people attending a barbeque in the front yard across the street from the Lansing home. They became curious and walked closer. Others who signed the statements said that they could see the front of the Lansing house and saw the officers bring appellant out of the house to the police car. None of these newly discovered witnesses could see into the house nor did they hear what was said.

Appellant would have us believe that he did not see these potential witnesses when he was brought out of the house. Appellant knew as early as the preliminary hearing that it would be helpful to his case if he had someone to testify who would verify some of the things he said and dispute what the police said. The entire case depended on who the jury believed. So far as the record reveals, appellant made no effort to see if anyone in the vicinity of his house had seen or knew anything about the case.

One of the "newly discovered witnesses" was appellant's son-in-law who went to the Lansing house after learning that there was trouble therein. The substance of the son-in-law's sworn statement was that it was officer Rockwood who was the first one on the porch, rather than "the dark-haired guy" (Henderson), and that Rockwood was the first one to go inside the house. Also, Rockwood was doing the talking with someone through the screen door.

In *Grable v. State,* Wyo., 664 P.2d 531 (1983), we discussed the law relating to new trials based on newly discovered evidence. We said:

"* * * [I]t is clearly within the sound discretion of a district court to either grant or deny a motion for a new trial based on newly discovered evidence, and the ruling by the district court will not be

a basis for reversal of the conviction unless there is affirmatively shown an abuse of discretion by the district court. [Citations.]" *Grable v. State,* supra, at 532.

Appellant has the burden of demonstrating an abuse of discretion in the trial court's denial of his new trial motion. *Seigert v. State,* Wyo., 634 P.2d 323 (1981); and *Opie v. State,* Wyo., 422 P.2d 84 (1967).

■ A party seeking a new trial on the grounds of newly discovered evidence must demonstrate:

"1. The evidence must have come to the defendant's knowledge since the trial.

"2. It must not have been owing to want of due diligence on the part of the defendant that it did not come to his knowledge sooner.

"3. The newly discovered evidence must be so material that it would probably produce a different verdict if the new trial were granted.

"4. The newly discovered evidence is not cumulative, viz., speaking of facts in relation to which there was evidence at the trial. [Citations.]" *Grable v. State,* supra, at 533.

All four of these tests must be met for appellant to be entitled to a new trial, and if any one is not satisfied there is no error in the denial of the new trial motion. *Grable v. State,* supra. Furthermore,

"[w]here a motion for a new trial is made on the ground of newly discovered evidence the burden is on the moving party to prove that it was discovered since the trial and that he was free from fault or lack of due diligence in failing to discover, before or during the trial, the newly discovered evidence upon which he relies. [Citations.]" *Salaz v. State,* 561 P.2d 238, 243 (1977).

■ Appellant failed to establish the second element (and perhaps the third and fourth) of the four-part test set out in *Grable v. State,* supra. Under that requirement appellant must demonstrate that the newly discovered evidence could not have been found earlier through the exercise of due diligence. *Grable v. State,* supra; and

*Opie v. State,* supra. Failure to convince the court that due diligence was exercised constitutes sufficient grounds for denying a motion for a new trial. *Grable v. State,* supra. Appellant failed to convince the trial court that he had exercised due diligence in discovering evidence that was pertinent to his defense, nor has he convinced this court.

■ In any event, this case is not a problem of newly discovered evidence, but rather newly discovered witnesses. The sworn statements merely corroborate some of appellant's testimony, while contradicting the testimony of two police officers. We see no new evidence being offered, but only a different version of some of the evidence already produced by the police. Evidence which only impeaches a witness, contradicts or corroborates evidence produced at trial is not sufficient to grant a new trial. *Salaz v. State,* supra.

The trial court did not abuse its discretion in denying a new trial.

IV

Appellant's final assignment of error addresses the conditions of probation requiring him to obey the law, including minor traffic laws, and refrain from drinking. The judgment and sentence granting probation provides in part:

"3. The Defendant shall refrain from drinking of alcohol in any form or manner whatsoever in public or in private during the period of his probation.

"4. The Defendant shall not offend the laws of the community in which he lives, the State of Wyoming, or the United States of America. Any and all offenses, minor traffic offenses included, shall not be violated, and any violation thereof shall be considered a violation of the terms of this probation."

■ Sentencing judges have wide discretion in determining appropriate conditions of probation. The conditions imposed can be challenged only upon a showing that the trial judge exceeded his authority or

abused his discretion. The American Bar Association Standards for Criminal Justice provides in part:

"(e) Conditions imposed by the court should be reasonably related to the purposes of sentencing, including the goal of rehabilitation, and should not be unduly restrictive of the probationer's liberty or autonomy. Where fundamental rights are involved, special care should be taken to avoid overbroad restrictions or restraints which are so vague or ambiguous as to fail to give real guidance. * * * "

III ABA Standards for Criminal Justice, Standard 18–2.3, Sentences Not Involving Confinement, p. 18.72 (1980).

The commentary on Standard 18–2.3(e), supra, says:

"Paragraph (e) requires that probation conditions be reasonably related to the purposes of sentencing. * * * California courts have probably been the most aggressive in interpreting what 'reasonableness' means in this context, and they have established the following rule for testing conditions of probation. A condition will be held invalid if it (1) has no relation to the crime of which the offender was convicted, (2) relates to conduct that is not itself criminal, and (3) requires or forbids conduct that is not reasonably related to possible future criminality. As a practical matter, use of the phrase 'purposes of sentencing' in paragraph (e) subsumes substantially the same considerations. * * *

"The instant standards do not, however, endorse the gloss that a few courts have placed on the word 'reasonableness,' namely, that the condition be one with which the probationer can voluntarily comply, given the probationer's level of volition. These cases have typically invalidated conditions that the offender refrain from the use of alcohol where the offender's acute alcoholism made voluntary compliance with such a condition impossible. The view taken here is that to the extent alcoholism or drug use seems linked with future criminality, the interests of society deserve priority. Thus, the 'reasonableness' requirement should be satisfied by a relationship between the probationer's inability to control an alcohol or drug problem and anticipated future criminality."

In *Hicklin v. State,* Wyo., 535 P.2d 743 (1975), a condition of probation was "that you do not drink any intoxicants whatsoever." In that case we did not find any of the conditions of probation objectionable; however, we remanded for other reasons.

In *Martin v. State,* Alaska, 517 P.2d 1389 (1974), the sentencing judge ordered as a condition of probation that the defendant not use alcoholic beverages. In appealing revocation of probation Martin argued that a probation condition which required him to refrain from using alcohol violated a provision of the Alaska Constitution which required that penal sanctions should be based on the principal of reformation and the need to protect the public. The court stated:

"We find this contention devoid of merit. Appellant's drinking problems were discussed at some length prior to his original sentencing and again at the revocation hearing. The condition was originally imposed because appellant himself blamed his criminal behavior upon excessive drinking. * * * *Under these circumstances it was certainly reasonable for the sentencing court to conclude that appellant's rehabilitation was dependent upon his abstention from alcohol and so make abstention a condition of probation.* * * * " (Emphasis added.) *Martin v. State,* supra, at 1402.

Appellant admitted to being a disciple of Bacchus and an alcoholic, a condition for which he had been hospitalized. By his own admission, he "was constantly being arrested for being drunk in public and public disturbance." He was also arrested at least three times for driving while under the influence of alcohol. The probation officer concluded that, in the past, fines and substance abuse counseling never "significantly acted as a deterrent to [appellant's] behavior."

It was not an abuse of discretion to require appellant to abstain from the use of alcohol or to obey traffic laws or the law in general. Imposing these conditions to probation seems most appropriate considering that appellant's assaults on his wife and his traffic violations were, by his own admission, related to alcohol.

We hold that the conditions of probation requiring abstinence from alcohol and the obeyance of traffic laws are reasonably related to the purposes of sentencing, especially the goal of rehabilitation. We further hold that such conditions relate to the crime for which appellant was convicted and forbid conduct that might lead to future criminal behavior. Appellant has demonstrated that he requires specific and detailed rules to live by.

There is no merit to appellant's appeal.

Affirmed.