Randy KESER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 86–167.

Supreme Court of Wyoming.

June 2, 1987.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

After a jury trial in county court, appellant Randy Keser was convicted of reckless driving, § 31–5–229, W.S.1977, reckless endangering, § 6–2–504, W.S.1977, destruction of property, § 6–3–201(b)(i), W.S.1977, and cruelty to animals, § 6–3–203(a)(ii), W.S.1977. The single issue on appeal is whether the district court erred in affirming the county court's denial of his motion for new trial.

We affirm.

On November 9, 1984, a criminal information was filed charging appellant Randy Keser with the four offenses described above. An affidavit of a member of the Natrona County sheriff's office, filed in support of the information, contained the following statements:

"2. That your Affiant was informed by one Joseph Joslyn, Jr. and one Allan J. Franklin that on September 3, 1984, at approximately 4:00 p.m. they were walking on the southbound side of Cole Creek Road approximately 150 feet south of Jade Road, which is located in Natrona County, Wyoming; that one late 1960's to early 1970's medium yellow vehicle with loud pipes was heading northbound on Cole Creek Road and approached towards them, Joseph Jr. and Allan; that said vehicle crossed the centerline and struck and killed a six (6) month old black, white and sandy mix shepard, named Zeus, which belonged to one Joseph Joslyn, Sr.; that said vehicle nearly hit said Joseph Jr. and said Allan, coming within two or three feet of them.

"3. That your Affiant was informed by said Allan J. Franklin that the driver of the aforesaid Oldsmobile vehicle, laughed after striking and killing said shepard mix with said vehicle.

"4. That your Affiant was informed by said Joseph Joslyn, Jr. and said Allan J. Franklin that one Randy Keser was the driver of the aforesaid Oldsmobile vehicle."

Jeffrey C. Gosman, Casper, signed the brief of appellant and presented oral argument.

A.G. McClintock, Atty. Gen., John W. Renneisen, and Sylvia Lee Hackl, (argued), Sr. Asst. Attys. Gen., signed the brief of appellee.

Appellant waived arraignment, entered a plea of not guilty and demanded a jury trial.

At trial the prosecution relied heavily on the testimony of the two eyewitnesses, Allan J. Franklin, age 13, and Joseph Joslyn, Jr., age 14. Allan Franklin testified that he and Joseph Joslyn, Jr., were walking along Cole Creek Road when a car of "cream color" with a "tannish-like roof" struck Joseph's dog; that he observed the driver of the car; and that he knew appellant was the driver because he saw his sideburns and the cap he usually wore. He also testified that he had previously seen appellant driving the car around town and that it was now broken down and sitting in appellant's yard. On cross-examination, Allan stated that his father and appellant did not get along very well; that his father had filed a criminal complaint charging appellant with battery in 1984; and that the charge was dismissed two months later. Defense counsel showed Allan a photograph of a gold-colored vehicle which was later identified by appellant as a broken down car sitting in his yard. Allan said that the car in the photograph was not the car that hit the dog. He identified appellant in court and said that he was "positive" that appellant was the person who ran over the dog.

Joseph Joslyn, Jr. testified that the car that struck the dog was a "yellowish cream color with a black roof"; that he saw the car strike the dog; that he was three feet from the car when it struck the dog; that he felt endangered; that he did not see the driver at all; and that he had seen and ridden in the car before. On cross-examination, he said that he did not know if appellant ran over the dog, but he recognized the car. He said he was not sure whether the car in the photograph was the car that ran over the dog, but the color was right. Finally, he testified that Allan Franklin's dad had "talked to him" about appellant and that Mr. Franklin "doesn't like him."

After the prosecution concluded its case, appellant took the stand. He testified that he owned the car in the photograph and that it had not been running since February of 1984. Appellant insisted that he was in Rock Springs on the Labor Day weekend when the incident occurred and that he did not run over the dog.

Appellant's neighbor testified that the vehicle in the photograph had been parked in appellant's yard for over a year and that he last saw it run in February or March of 1984. Another witness testified that appellant and his wife were with her in Rock Springs when the incident occurred and that they did not leave Rock Springs until September 4, the day after the dog was killed.

The jury found appellant guilty on all counts. After the trial, appellant interviewed two young boys, Domenick and Joshua Rittenhouse, who were friends of the two boys who testified for the prosecution. The Rittenhouse boys told appellant that one of the prosecution witnesses, Joseph Joslyn, Jr., had told them that he did not see who ran over his dog. On March 20, 1986, Mr. Keser filed a motion for new trial, alleging that he had discovered new evidence which showed that the prosecution witnesses committed perjury and that they had not witnessed the killing of the dog.

In support of his motion for new trial, appellant filed an affidavit of his trial counsel, who made the following statements:

"1. That he was the attorney for the Defendant in the above-entitled action.

"2. That he was not aware of the potential testimony of Domenick Rittenhouse and Joshua Rittenhouse, two friends of the chief prosecution witnesses, until after the trial of the above-entitled action.

"3. That the information regarding the Rittenhouses was discovered by the Defendant himself after the trial held April 25, 1985, by interviewing the members of his neighborhood on Cole Creek Road and neither the Defendant nor counsel for the Defendant to the best of Affiant's knowledge had any information that there were witnesses [who] would testify that the chief prosecutor's witnesses had perjured themselves.

"4. That your Affiant made an appointment with the Rittenhouses after the trial and they failed to show up and your Affiant understands that shortly thereafter the Rittenhouses moved."

Appellant also filed affidavits of Domenick and Joshua Rittenhouse. Domenick Rittenhouse stated:

"4. That your Affiant was a neighbor and close personal friend of Joe Joslyn whose family owned a dog.

"5. In early September of 1984, Joe Joslyn called me on the telephone and told me that his dog had just been run over. He said that they did not see who it was that ran the dog over, all they heard was the tires squeal, and the dog yelping.

\* \* \* \* \* \*

"7. I then talked to Joe Joslyn several days after the dog was killed and asked him if they had found out anything about the dog and he said that they had found out who had killed their dog. Joe said the guy swerved to hit him and A.J. Franklin and they jumped off the road with their bikes and the guy hit their dog. I did not believe this story because he had told me on the phone after the dog was hit he didn't know who did it.

"8. On one other occasion just prior to the Court date, Joe Joslyn called me and said that he had just spoken with A.J. Franklin, who was also an acquaintance of mine and A.J. Franklin's Dad told them what to say in Court, because he wanted to get the person that they were blaming for running over the dog."

Joshua Rittenhouse made the following statement:

"5. I overheard A.J. Franklin telling one of his friends on the school bus that he saw a blue car going by fast on Cole Creek Road and that Joe Joslyn called him just after that and said, 'Did you see a blue car go down the road because it hit my dog.'"

The county court denied appellant's motion for new trial, concluding that the evidence contained in the affidavits merely attacked the credibility of the State's witnesses and that under this court's decision in *Grable v. State*, Wyo., 664 P.2d 531 (1983), newly discovered evidence regarding the credibility of a witness is not sufficient grounds for a new trial.[1] Appellant then appealed to the district court which affirmed the county court's denial of the motion for new trial upon the same grounds. Appeal is now taken to this court.

In reviewing a trial court's denial of a motion for new trial based upon newly discovered evidence, we will not reverse unless appellant affirmatively shows an abuse of discretion by the trial court. *Grable v. State*, supra, at 532. In *Saldana v. State*, Wyo., 728 P.2d 1121, 1123 (1986), we said:

" 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " Quoting from *State ex rel. Carroll v. Junker*, 79 Wash.2d 12, 482 P.2d 775 (1971).

Thus, an abuse of discretion occurs when a court acts in a manner which exceeds the bounds of reason under the circumstances. *Martinez v. State*, Wyo., 611 P.2d 831 (1980).

In order to obtain a new trial on the grounds of newly discovered evidence a defendant must establish all of the following:

1. The evidence has come to his knowledge since trial;

2. It was not owing to the want of due diligence that it did not come sooner;

---

1. Appellant's motion for new trial was decided under Rule 31, W.R.Cr.P.C.C., which is identical in substance to Rule 34, W.R.Cr.P.

3. The evidence is so material that it would probably produce a different verdict; and

4. The evidence is not cumulative. *Siegert v. State*, Wyo., 634 P.2d 323, 326 (1981); *Opie v. State*, Wyo., 422 P.2d 84, 85 (1967).

We have held that a new trial will not be granted if the defendant's newly discovered evidence merely impeaches a witness. *Grable v. State*, supra; *Salaz v. State*, Wyo., 561 P.2d 238 (1977). Both the county court and the district court applied this rationale in disposing of this case.

■ There is a difference between evidence which merely goes to credibility or impeaches a witness by calling his credibility into question and evidence which is offered to show an "eyewitness" to a crime gave false identification testimony. The evidence offered by appellant in this case was impeaching; it also falls into the latter category, as it was offered to show that Allan Franklin, the only witness who claimed to see defendant commit the crime, was not present at the scene of the crime. Unlike the impeachment evidence offered in *Grable v. State* and *Salaz v. State*, supra, this evidence is so material that it would probably produce a different verdict. Thus, the district court was not correct in ruling that appellant's motion and affidavits failed to support any ground upon which a new trial may be granted.

■ We have held, however, that even if a lower court's reasoning is incorrect, its decision should not be reversed if it is sustainable on another theory. *DeWald v. State*, Wyo., 719 P.2d 643 (1986). We find that appellant failed to meet his burden of proving that his failure to discover the evidence before trial was not due to lack of diligence. "Whether sufficient diligence was used must ordinarily be determined from the composite knowledge and conduct of both the accused and his counsel." 3 Wright, Federal Practice and Procedure: Criminal 2d § 557 at 327–329 (1982). In this case the affidavit of the officer describing the proposed testimony of the two witnesses was filed with the information. Appellant and his counsel knew before trial that Franklin would identify him as the driver of the car. Yet appellant conducted his own investigation only after his conviction and, by interviewing neighbors, uncovered the alleged contradictory evidence used to support his motion for new trial.

The evidence appellant now seeks to produce could as easily have been discovered before trial as after trial. It has nothing to do with poverty or wealth. It was developed by simple inquiry of a few neighbors in the sparsely populated area where this incident occurred. If we were to adopt the rule suggested by the dissent, every convicted person in every case could produce self-serving affidavits of alleged new evidence conflicting with evidence at trial (now called perjury) and be entitled to an evidentiary hearing and then another trial and, after that, more affidavits, more hearings, and more trials ad infinitum. The essence of our criminal justice system is that citizens be represented by counsel and afforded one trial by a jury at which they must produce all of the evidence available and reasonably dicoverable upon which they choose to rely and that they will be bound by the result of that trial. Were it otherwise, the criminal justice system would sink into the quicksand of multiple, endless evidentiary hearings and trials with never a final disposition.

Appellant has failed to demonstrate that through the exercise of due diligence this evidence could not have been obtained before trial. Accordingly, his motion for new trial must fail.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

In factual justification for societal incarceration of a human being for eight months and ten days, the evidentiary case panorama unfolded.

As the prosecutorial evidence, Allan J. Franklin testified to having been an eyewitness, identified the car that struck the dog as cream-colored with a tannish-like roof, and identified the defendant as the

driver. Joseph Joslyn, the other prosecution witness, identified the car as the defendant's—a yellowish, cream-colored vehicle with a black roof.

In a post-trial affidavit, Domenick Rittenhouse, age 15, stated:

"7. I then talked to Joe Joslyn several days after the dog was killed and asked him if they had found out anything about the dog and he said that they had found out who had killed their dog. Joe said the guy swerved to hit him and A.J. Franklin and they jumped off the road with their bikes and the guy hit their dog. I did not believe this story because he had told me on the phone after the dog was hit he didn't know who did it.

"8. On one other occasion just prior to the Court date, Joe Joslyn called me and said that he had just spoken with A.J. Franklin, who was also an acquaintance of mine and A.J. Franklin's Dad told them what to say in Court, because he wanted to get the person that they were blaming for running over the dog."

Joshua Rittenhouse, age 14, also stated by affidavit:

"4. That your Affiant was a neighbor and personal friend of A.J. Franklin, who was involved in the case concerning the dog of Joslyn's that was killed.

"5. I overheard A.J. Franklin telling one of his friends on the school bus that he saw a blue car going by fast on Cole Creek Road and that Joe Joslyn called him just after that and said, Did you see a blue car go down the road because it hit my dog.

"6. I was sitting in the seat across from A.J. Franklin when this conversation took place and I was able to overhear the conversation without any trouble.".

It does not take any particular brilliance to tell that someone was lying, and particularly so since the defendant had the trial testimony of a third party that his cream-colored car had not been operational for about eight months before the incident occurred.

The majority opinion concedes that the new evidence tended to show that the prosecution's eyewitness gave false identification testimony—that the only witness who claimed to see the defendant commit the crime was not present at the scene of the crime. I agree with the majority that this type of new evidence is a ground upon which a new trial may be granted. Yet, the majority affirm the defendant's conviction because the defendant failed to meet his burden of proof that his failure to discover the new evidence was not due to lack of diligence. I concede that the majority accurately express the correct legal standards under Rule 34, W.R.Cr.P., but I strongly disagree with the majority's application of that standard to deny the defendant a curative opportunity if perjury did occur.

Initially, I think it is significant that the trial court did not base its denial of the defendant's motion for a new trial on the defendant's failure to prove due diligence, and this court is not constrained by the customary standard of deference which attaches to factual determinations made by the trial court.

I think that diligence should be evaluated in light of all surrounding circumstances. In this case, the defendant was charged with four misdemeanors. It is unrealistic to expect a misdemeanor defendant to canvass the neighborhood to try and locate persons who will be able to demonstrate that the prosecution's star witness is lying, particularly where the defendant is relying on an alibi defense. Perhaps it would have been *more* diligent to attempt to discredit the expected false testimony, but I would not conclude that the defendant lacked due diligence in the preparation of his defense or search for exculpatory evidence. Unfortunately, what you do not know about the existence of relevant witnesses is what can hurt you. Wright, Federal Practice and Procedure: Criminal 2d § 557 at 327.

" * * * Whether sufficient diligence was used must ordinarily be determined from the composite knowledge and conduct of both the accused and his counsel. All that is required is ordinary diligence, not the highest degree of diligence." Id. at 327–329.

762

Although the burden is on the defendant to show due diligence in his search for the previously unexposed evidence, this court too easily makes the fulfillment of that burden unattainable. In this case, the level at which the majority place the due-diligence requirement is without logical or legal justification. *United States v. Walus*, 616 F.2d 283 (7th Cir.1980). I am left with a clear perception that the result reached by the majority in this case perpetuates a great injustice. At some point, the clear interests of justice must outweigh the mechanical application of an excessively high due-diligence hurdle. The manner in which the majority apply the due-diligence standard in effect determines that perjury is the acceptable norm for prosecutorial success in attaining convictions.

In prior cases where this court has affirmed a trial court's denial of a motion for new trial, this court has emphasized that the defendant had knowledge of the existence of witnesses and failed to bring them. See *Siegert v. State*, Wyo., 634 P.2d 323 (1981), and *Salaz v. State*, Wyo., 561 P.2d 238 (1977). In this case, the defendant was not aware of the possible witnesses who we now know to be classmates of the complaining witnesses. Rather, it is clear that the existence of these witnesses came to light only after his trial and conviction in what appears to be appellant's continued effort to avoid incarceration after his conviction based on principal-witness perjury.

The dialectic created by the affidavits and new-trial motion is that either felonious perjury was committed by the trial witnesses to obtain a criminal conviction, or false affidavits were filed by otherwise uninvolved persons in support of the motion for a new trial. By this court's disposition based on lack of due diligence, we countenance a more serious crime than originally involved, without permitting the true facts to be ascertained.

I cannot find in constitutional obligation, Art. 5, § 2 of the Wyoming Constitution, or statutory direction, § 5–2–102, W.S.1977, that our responsibility has been met, nor, incidentally, that our duty to afford a charged defendant with due process is secured pursuant to Art. 6, § 6 and Art. 1, § 10 of the Wyoming Constitution. Perjury is an insidious pollutant gnawing at the very essence of the adjudicatory processes which serve as the hallmark of our democratic society.

The process by which the factual controversy in this case should be resolved is simple. When a motion for a new trial is supported by nonrecanted statements which materially challenge a significant prosecution witness by suggesting that witnesses' testimony was perjured, there should be an evidentiary hearing to determine if a material and substantive conflict exists. This case is an obvious and uncluttered example. If the four young persons who would be appropriate witnesses all are called to appear before the trial court, namely, Allan J. Franklin and Joseph Joslyn, Jr. as prosecuting witnesses, and Domenick Rittenhouse and Joshua Rittenhouse as factual contestants, then the resulting testimony should be informative to the court and realistically dispositive. Either the defendant would present evidence sufficient for a new trial or dismissal of the criminal charge, or he would not. But justice will have been served and reason afforded to know that an innocent man did not go to jail on viciously concocted perjured testimony.

A standard should be established for the circumstance here presented, that a court is not required to grant a new trial on affidavit evidence, but when there is reasonable evidence of material perjury, the trial court should hold an evidentiary hearing. The hearing criteria can be emplaced within the standard rules normally enunciated in regard to new trial motions premised on newly discovered evidence as defined for discretion and decision.

This court has previously followed in a general way the rules outlined in *United States v. Pope*, 415 F.2d 685, 691 (8th Cir., 1969), *cert. denied* 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 132 (1970):

" * * * (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence

on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal."

We should follow the rule and the principle expressed in *Lindhorst v. United States*, 585 F.2d 361 (8th Cir.1978), wherein the court found error when the trial court concluded that an evidentiary hearing should not be required:

"The district judge cannot credit the recanting witnesses' trial testimony and discredit their affidavits without affording appellant an opportunity to approve the allegations." Id. at 365.

Lindhorst is a recantation case, and is certainly more confining than is this case where third-party evidence indicates material witness perjury. See Comment, *Gary Dotson as Victim: The Legal Response to Recanting Testimony*, 35 Emory L.J. 969 (1986). See also *State v. Robillard*, Vt., 520 A.2d 992 (1986), and *State v. Robillard*, 146 Vt. 623, 508 A.2d 709 (1986), where by the first appeal the question of false testimony was resubmitted to the trial court, and then in the second case, the Supreme Court of Vermont approved the hearing conducted which confirmed lack of believability. The standard to be applied, although relating to recanted testimony, is well taken.

"Accordingly, we hold that the standard to be applied in this jurisdiction, which, in essence, contains elements of both the standards discussed above is as follows: a new trial will be required when: (1) the court is reasonably well satisfied that the testimony given by a material witness is false; (2) without that testimony the jury *probably* would have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given or did not know of its falsity until after the trial. We think this test best balances fair trial protections with the dangers and unreliability of recanted testimony." *State v. Robillard*, supra, 508 A.2d at 713.

Of course, this court will not reverse a trial court's denial of a motion for new trial based upon newly discovered evidence unless the appellant shows an abuse of discretion. In this case, the interests of justice so clearly favor a new trial that I would find that the trial court's denial of the defendant's motion without at least an evidentiary hearing amounted to an abuse of discretion. Under any standard, neither this court nor the trial court should sanction a criminal conviction obtained by perjured testimony. At least in cases where justice has been very apparently thwarted by testimony which later can be proven false, this court should not affirm a misdemeanor conviction obtained by what appears to be felony perjury. I would remand the cause for an evidentiary hearing at which, based on the evidence then presented, the trial court could determine whether a new trial or judgment of acquittal is, as a matter of justice, properly required. *United States v. Peltier*, 731 F.2d 550 (8th Cir.1984).

The rule on diligence promoted by the court decision simply lacks rational justification in real life. It is implausible to suggest that one cannot produce later found testimony of admitted perjury on the basis that everyone with whom some contact by the principal witness may have occurred could have known something which related to testimony validity. In the academic sense, some confidence that witnesses will not commit perjury or that perjury can be detected by cross-examination must exist, or due diligence becomes a question of the sufficiency of finances to defend, and justice is determined by wealth. *United States v. Walus*, supra. This court has simply been unable to find any case reflecting absence of due diligence which encompasses the same standard as will be imposed by this decision. As applied, the new due-diligence criteria require that in order to demonstrate diligence, every adult in the immediate area or every nonadult in Natrona County should have first been interviewed to see whether he or she had talked to the complainants about these events. The majority argue from conclusion to premise by asserting that since it was possible to later establish, it was not due diligence to have failed earlier to discover. The extension of such logic would require

Einstein's theories to have been discovered by cavemen. Apparently this court in the current opinion now converts this case from a witness-perjury question to an ineffectiveness-of-counsel status within the purview of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). I decline to accept this application.

I would reverse and remand for an evidentiary hearing directed to determine whether false and perjured trial testimony was given by the complaining witnesses. The majority recognize that Randy Keser may be innocent and may have been convicted by perjured testimony, and then affirm because earlier discovery had not revealed classmates with whom confidences had been exchanged. This recognition and result establish for Wyoming a system of due process confined by perjury. This result goes far toward undermining public confidence in Wyoming's judicial system.

Although not intentional in this case, where the falsity, if actually existent, was not known to the prosecution, I would believe that *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), in majority and dissent is philosophically applicable. See also *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). I would apply the standard enunciated by the North Carolina Supreme Court in *State v. McDowell*, 310 N.C. 61, 310 S.E.2d 301, 309 (1984):

"* * * Would the evidence, had it been disclosed to the jury which convicted defendant, and in light of all other evidence which that jury heard, likely have created in the jury's mind a reasonable doubt which did not otherwise exist as to defendant's guilt?"

In this case, the newly discovered evidence, had it been disclosed, almost certainly would have created in the mind of the jury a reasonable doubt as to defendant's guilt.