**Helen KAVANAUGH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Robert MARKLAND, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

Nos. 88–46, 88–47.

Supreme Court of Wyoming.

Feb. 27, 1989.

Steven R. Czoschke, Gillette, for appellants.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY, and GOLDEN, JJ.

THOMAS, Justice.

The major issue presented in these combined appeals is whether the trial court abused its discretion in imposing the sentences that it did upon Kavanaugh for aiding and abetting sexual assault in the second degree and upon Markland for committing sexual assault in the second degree. Additional questions are presented by the

appellants who challenge the sufficiency of the evidence to sustain the convictions and assert that the district court erred in refusing to grant their respective motions for a new trial based upon newly discovered evidence. We hold that the district court did not abuse its discretion in imposing the sentences, and we are satisfied that the evidence was sufficient to sustain the convictions. We also are satisfied that the district court did not abuse its discretion in denying the respective motions for new trial. We affirm the judgments and sentences of both appellants.

In his brief as appellant, Robert Markland (Markland) asserts the following issues:

"I. THE DISTRICT COURT ERRED IN FAILING TO GRANT PROBATION TO THE DEFENDANT AND THE DISTRICT COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO A TERM OF NOT LESS THAN TEN YEARS NOR MORE THAN LIFE IN THE WYOMING STATE PENITENTIARY.

"II. THE DISTRICT COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE.

"III. THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED AT TRIAL FOR THE JURY TO CONVICT THE DEFENDANT OF VIOLATION OF W.S. SECTION 6–2–303(a)(ii)."

In her brief of appellant, Helen Kavanaugh (Kavanaugh) asserts identical issues except that her statutory reference in Issue III is to § 6–1–201, W.S.1977, instead of § 6–2–203(a)(ii), W.S.1977. The State of Wyoming, as appellee, presented one brief responding to both appeals, and its articulation of the issues is:

"I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANTS TO TERMS OF IMPRISONMENT?

"II. WHETHER THE TRIAL COURT PROPERLY DENIED APPELLANTS' MOTIONS FOR NEW TRIAL?

"III. WHETHER THE EVIDENCE IS SUFFICIENT TO SUSTAIN APPELLANTS' CONVICTIONS FOR SECOND DEGREE SEXUAL ASSAULT AND AIDING AND ABETTING SECOND DEGREE ASSAULT?

"IV. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT CORROBORATION OF THE VICTIM'S TESTIMONY WAS NOT REQUIRED, AND WHETHER ANY SUCH ERROR WAS PREJUDICIAL?"

We commence our review with a consideration of the sufficiency of the evidence. It, of course, must be evaluated in the light of the charges upon which the appellants were convicted. Section 6–2–303, W.S.1977 (June 1983 Repl.), which Markland was convicted of violating provides, in pertinent part:

"(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:

\* \* \* \* \* \*

"(ii) The actor causes submission of the victim by any means that would prevent resistance by a victim of ordinary resolution; \* \* \*."

Kavanaugh's conviction was for a violation of § 6–1–201, W.S.1977 (June 1983 Repl.), which provides, in that part applicable here:

"(a) A person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed, is an accessory before the fact.

"(b) An accessory before the fact:

\* \* \* \* \* \*

"(iii) Upon conviction, is subject to the same punishment and penalties as are prescribed by law for the punishment of the principal."

The jury was instructed that the elements of sexual assault in the second degree are:

"1. The defendant Robert Markland inflicted sexual intrusion on [the victim]; and,

"2. The defendant Robert Markland caused submission of [the victim] by any

means that would prevent resistance by a person of ordinary resolution; * * *." With respect to the elements of the crime of aiding and abetting sexual assault in the second degree, the jury was instructed as follows:

> "1. Offenses of sexual assault in the second degree were committed by Robert Markland; and
>
> "2. The defendant Helen Kavanaugh knowingly and willfully counseled, encouraged, hired, commanded, or otherwise procured those offenses to be committed; * * *."

 In determining whether there was sufficient evidence to sustain the convictions, we apply the rule set forth in *Dangel v. State*, 724 P.2d 1145, 1148 (Wyo.1986):

> " '[T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict. *Broom v. State*, 695 P.2d 640, 646 (Wyo.1985).' *Aden v. State*, Wyo., 717 P.2d 326 (1986) at 327."

This standard was followed in *Johnston v. State*, 747 P.2d 1132 (Wyo.1987), and *Aden v. State*, 717 P.2d 326 (Wyo.1986). See also *Young v. State*, 678 P.2d 880 (Wyo.1984); *Harvey v. State*, 596 P.2d 1386 (Wyo.1979). In doing so, we do not weigh the evidence, and we do not re-examine the credibility of witnesses, even if there is only one crucial witness as in this case. *Johnston.* That function is assigned to the jurors who, because they can observe the demeanor and composure of the witnesses, are in the best position to evaluate credibility and resolve conflicts in the testimony. *Righter v. State*, 752 P.2d 416 (Wyo.1988); *Johnston; Broom v. State*, 695 P.2d 640 (Wyo.1985); *Russell v. State*, 583 P.2d 690 (Wyo.1978); *Janski v. State*, 538 P.2d 271 (Wyo.1975).

The victim in this case was Kavanaugh's minor daughter, then age sixteen. Markland was forty years old and, at the time of the offense, was sharing a townhouse with Kavanaugh and her divorced sister. Kavanaugh had been living with Markland continuously for about twelve years. The victim had first come to live with them when she was about eight or nine years old. In October of 1986, she married, and she and her husband moved to Hawaii. In April of 1987, she sought permission to return to Gillette, and Markland and Kavanaugh agreed to that. Markland provided the funds for travel. He also paid for an abortion to terminate the victim's pregnancy.

With respect to the events resulting in these convictions, the victim testified that, about June 11 of 1987, Markland asked her to shower with him. She did so and, during their shower, he engaged in cunnilingus with her. This activity was consistent with the victim's acceptance of Markland's proposition that she should become his mistress and that he would furnish her a car if she did. After the shower incident, the victim advised Markland that she did not wish to continue the arrangement because she was not comfortable in doing so. Markland replied that her decision was okay, but she would not receive the car. Nevertheless, a few days later, after a struggle, Markland again engaged the victim in oral sex. That sexual activity resulted in vaginal intercourse between Markland and the victim. After this episode, the victim determined to leave the house, and she did so.

About a month later, she went to the business premises which Kavanaugh and Markland used and confronted them about retrieving her clothing and other belongings from their house. Kavanaugh and Markland refused and told the victim that these items were being held as collateral for money which they had advanced to her. The victim became angry and went to a friend's house where she told the story of sexual activities involving both Markland and Kavanaugh. The authorities then were notified, and criminal proceedings were initiated against Kavanaugh and Markland.

Markland denied the victim's allegations of sexual misconduct, and Kavanaugh denied any knowledge of any sexual contact. Their stance was that the victim had fabricated the story because she was not able to "get her way" and because they would not return her belongings.

' At trial, evidence was introduced of a free sexual lifestyle prevailing in the household. That evidence disclosed that Markland and Kavanaugh frequently appeared nude around the house and often took showers together. The evidence also discloses that it was their custom to take nude photographs of each other, as well as other unclad acquaintances, and place them in the "family album." When the victim initially came to live with Markland and Kavanaugh, Markland required her to shower with him. Then nude photographs of her, often including one or the other of the appellants, also nude, appeared in the "family album." This sexual lifestyle continued as the victim matured, and her conduct and social development deteriorated so much that she was committed to the girl's school in Sheridan. After her release from the girl's school, she married an employee of Markland, and she and her husband went to live in Hawaii.

■ The testimony of the victim was sufficient to establish the element of sexual intrusion with respect to the charge against Markland. The circumstances surrounding the lifestyle in the house justify the finding that the victim's submission was the product of means that would prevent resistance in a person of ordinary resolution. Those circumstances produced a distorted perception of proper parent-child relations, proper sexual conduct, and induced the victim to conclude that this was normal behavior. Expert psychological testimony established that the victim considered appellants' behavior as normal. Part of her confusion in establishing the dates of sexual misconduct was attributable to her inability to identify sexual misconduct. In addition, Markland was an authority figure who had, in effect, assumed the role of a stepfather for a number of years. The jury also was entitled to consider the offer of a material reward to become Markland's mistress. The submission to sexual acts with Markland under the circumstances was clearly the product of these events and circumstances, and the jury was entitled to find that a person of ordinary resolution would have been prevented from resisting Markland. The evidence was sufficient to sustain Markland's conviction.

■ Turning then to the sufficiency of the evidence in the case of Kavanaugh, the first element of that offense is established by Markland's conviction. With respect to the second element, the victim testified that Kavanaugh counseled and encouraged her to have sexual relations with Markland. She said things such as, "[W]ell, I don't care if you use Robert for a night" and if someone "had offered to buy [her] a car and everything else included if [she] would sleep with them a few times, [she] would jump at the chance." Kavanaugh explained other "advantages" of an intimate relationship with Markland by saying, "[W]ell, if you slept with Robert you ... wouldn't have to worry about getting hurt or catching diseases like you would with some of these other people you've been sleeping around with." In addition, when hearing the victim struggling with Markland as she resisted his advances, Kavanaugh came downstairs and said to the victim, "[I]f I hear one more noise out of you, I am going to come back down here and kill you." This is clear evidence that Kavanaugh aided and abetted Markland in the commission of his crime.

Furthermore, Kavanaugh admitted to seeing the victim holding Markland's penis in her hand. This manifests concrete knowledge of sexual contact between those two despite Kavanaugh's denial of such knowledge. When observing this event, Kavanaugh remained silent and allowed the conduct to persist. Her silence and her encouragement further manifest the second element of the offense of aiding and abetting sexual assault. The jury was entitled to accept the victim's testimony as probative, and it sustains the individual elements of the charge against Kavanaugh. Kavanaugh's conviction is supported by sufficient evidence.

The "family album" was placed in evidence, as were certain pornographic movies, sexual toys, and sexual aids discovered by the police. These are not necessarily probative of sexual activity involving the

victim. Other witnesses for the State had no direct knowledge of these events. Kavanaugh's sister's testimony was that she was not aware of any untoward behavior in the household. Thus, the proof of the appellants' crimes in this case must be found in the victim's testimony.

Markland and Kavanaugh urge in their appeals that her testimony, without more, is not sufficient to sustain their convictions. They regard it as entirely unbelievable, and contend that this court must reach the same conclusion. They point to the fact that the victim was biased against them, inconsistent in her testimony, and appears essentially to be simply an ungrateful, spiteful child seeking revenge by lying about imaginary wrongs. They also point to the lack of any physical evidence and maintain correctly that the evidence is not sufficient without the victim's testimony. They argue that her testimony is totally fabricated and a "fairy tale."

■ The appellants' arguments in this court are contrary to the standard by which we review the evidence. It is not our function to determine the victim's credibility or to weigh the evidence in the case. The jury that tried the case concluded that the victim was credible, and that conclusion determines the issue of credibility. The jury also was satisfied that the evidence established the elements of the offense, and there is no absence of evidence. The members of the jury resolved the conflicts in the testimony in favor of the State and against the defendants, which they were entitled to do. In accordance with the authority previously cited, we have no choice but to affirm the convictions despite appellants' arguments that the victim was not credible and, therefore, the evidence was insufficient.

■ The appellants' claim of error relating to failure to grant their motions for a new trial is a tandem argument. Their motions were premised upon the claim of newly discovered evidence. The granting or denial of such a motion is entirely within the sound discretion of the trial court, and its ruling will not be reversed in the absence of an affirmative showing that there was an abuse of discretion. *Keser v. State,* 737 P.2d 756 (Wyo.1987); *Grable v. State,* 664 P.2d 531 (Wyo.1983); *Siegert v. State,* 634 P.2d 323 (Wyo.1981); *Opie v. State,* 422 P.2d 84 (Wyo.1967). Our review is limited to a consideration of any abuse of discretion by the trial court. The burden of demonstrating that abuse is upon the appellants. *Siegert; Opie.*

■ Our rule is that the abuse of discretion is present only when four specific criteria have been established. These are: (1) the evidence has come to the movant's attention subsequent to the trial; (2) it was not "owing to the want of due diligence" that it was not discovered earlier; (3) the evidence is so material that it would probably produce a different verdict in a new trial; and (4) the evidence is not cumulative, that is, it does not speak to facts "in relation to which there was evidence at trial." *Keser; Grable; Lansing v. State,* 669 P.2d 923 (Wyo.1983); *Opie.* We will not identify any abuse of discretion in the refusal of the district court to grant a new trial on the basis of newly discovered evidence unless the record establishes all four of these prerequisites.

■ Markland and Kavanaugh contend that the victim's statements in a pre-sentence report differ so markedly from her trial testimony that they, in fact, constitute newly discovered evidence. They contend that some small inconsistencies in relating the sequence of events reflects adversely on the victim's credibility. We cannot agree with this position. These inconsistent statements of which the appellants complain are not direct quotes from the victim. They merely constitute paraphrases of her oral statements. It is also not clear whether they were made under oath. It is thus arguable whether they constitute competent evidence. If we assume, arguendo, that they do, these statements still do not satisfy all of the prerequisites.

The appellants contend that this evidence came to their knowledge subsequent to trial. We accept the fact that the presentence report upon which appellants base their claim was not available prior to trial,

but their position continuously was that the victim's testimony was not consistent. Some further evidence that the victim's credibility is destroyed because other information manifests additional inconsistencies cannot constitute "newly discovered evidence," particularly with inconsistencies that are no more significant than those asserted. This is simply more of the same proposition previously asserted. Much the same thing is true with respect to the second prerequisite and the appellants' claim that it was not "owing to want of due diligence" that the new evidence was not discovered sooner. The claimed "evidence" is cumulative instead of new. We conclude that the appellants have failed to present new evidence and, by definition, have failed to meet the burden of the first two prerequisites. *Lansing; Salaz v. State,* 561 P.2d 238 (Wyo.1977).

This conclusion makes it unnecessary to discuss the last two prerequisites, but we also note that newly discovered evidence must be so material that it is likely to produce a different verdict upon retrial, and it must not address facts developed at the trial. *Lansing.* The new evidence to which appellants point, relating only to the victim's inconsistency, fails both of these tests. This is simply a further attempt to impeach her which is not so material that it is likely to produce a different verdict upon retrial. Considering the extent to which the victim's credibility was tested at the trial, it becomes truly cumulative. Evidence "which only impeaches a witness or contradicts evidence produced at trial is not sufficient to grant a new trial." *Salaz,* 561 P.2d at 243; *Keser,* 737 P.2d 756; *John B. Roden, Jr., Inc. v. Davis,* 460 P.2d 209 (Wyo.1969). Our previous cases adequately dispose of the issue. The appellants have failed to establish the prerequisites for reaching a conclusion of abuse of discretion in refusing to grant a motion for a new trial.

■ The last issue which the appellants present is abuse of discretion by the trial court in imposing sentences. We cannot follow the appellants to their conclusion. Markland was sentenced to a term of not less than ten years nor more than life. Kavanaugh was sentenced to a term of not less than seven years nor more than life. In each instance, the sentence exceeds the minimum sentence permitted for the crimes of which these appellants were convicted, which is five years in both cases. The claim of appellants is that they should have been granted probation because they were both first offenders or, at the very least, they should have received minimum sentences if this court concludes that probation is inappropriate. Markland points to his honorable service in the military; his service as a police officer in the community; and his success in operating a business since 1980. Kavanaugh points to her service in the law enforcement field in the community and also to her participation in business affairs since 1980. The summary of their contentions is that these sentences are excessive and unreasonably harsh considering their prior untarnished backgrounds; the positions which they held in the community; and the contributions each made in community affairs.

■ Most convicts consider their sentences harsh, and there is no guarantee to anyone of probation or a minimum sentence. These arguments, however, are not relevant in the context of an appeal. The function of imposing sentence is assigned to the trial judge. The record demonstrates that, in this case, the sentencing judge considered fully and carefully the information upon which the appellants rely. The rule is that we will not adjust a sentence in the absence of a clear showing of an abuse of discretion. See *Martin v. State,* 720 P.2d 894 (Wyo.1986); *Hicklin v. State,* 535 P.2d 743, 79 A.L.R.3d 1050 (1975).

Recently, we reiterated the standard by which we review such claims:

"* * * In *Shepard v. State,* Wyo., 720 P.2d 904 (1986), we stated our long standing rule of law that this Court will review sentences for an abuse of discretion by the trial court. In determining whether there has been an abuse of discretion, each case must stand on its own peculiar facts, and the ultimate question

is whether or not the court could reasonably conclude as it did. Id. In *Mower v. State*, Wyo., 750 P.2d 679 (1988), we further stated that the imposition of probation lies within the sound discretion of the trial court, and we will not reverse the actions of that court unless there is a clear abuse of discretion." *Roose v. State*, 753 P.2d 574, 579 (Wyo.1988).

It is clear we look only for an abuse of discretion by the trial court. See *Chapman v. State*, 728 P.2d 631 (Wyo.1986).

Addressing first their request for probation, probation is an act of grace and clemency, and the only right the appellants can claim is to have the trial court consider probation. *Roose.* The trial court did that in this instance. Probation was considered, and rejected, during the sentencing hearing. The degree to which consideration is given to probation must rest within the sentencing court's discretion. There are no pre-determined requirements. *Beaulieu v. State*, 608 P.2d 275 (Wyo. 1980). As this court recommended in *Volz v. State*, 707 P.2d 179 (Wyo.1985), the sentencing judge set forth his reasons for rejecting probation for Markland and Kavanaugh in the record. The judge addressed the function of rehabilitation and explained that even though it is a linchpin of probation, it did not appear that it would be effective in this instance because Markland and Kavanaugh continued to deny any wrongdoing. The judge considered the question of danger to the public and stated that any other impressionable female could be at substantially the same risk if found in circumstances similar to those of this victim. He remarked that to believe otherwise "would be like saying the person who murders both of his parents is not likely to be again faced with that problem because he no longer has any parents to murder." He next alluded to the seriousness of the offense and explained that it would be significantly depreciated by probation instead of incarceration. *Volz.*

Clearly, the district court concluded that a probationary sentence for Markland and Kavanaugh, considering the nature of their conduct and the assault, would be sending an inappropriate message to the remainder of society. Those comments alone would justify the denial of probation. The sentencing judge went on, however, to explain that these defendants needed to be punished, manifesting his consideration of the retributive function of criminal punishment. Finally, he explained that "it's necessary that punishment be imposed in these kinds of cases to deter others similarly situated in committing these kinds of crimes." *Ventling v. State*, 676 P.2d 573 (Wyo.1984). The trial court obviously considered probation, and that is all that the appellants have the right to claim. That right has been fully protected, and their claim of abuse of discretion is without merit.

The further contention that the sentences were excessive and that Markland and Kavanaugh should have been given the minimum sentence are resolved with equal ease. The standard is the proper exercise of discretion by the trial court. "[T]his court will not set aside a sentence which is within the legislatively mandated minimum and maximum terms in the absence of a demonstration of a clear abuse of discretion." *Roose*, 753 P.2d at 579. The sentences imposed, seven years to life and ten years to life, clearly fall within the legislatively mandated minimum and maximum sentence of not less than five years nor more than life. We need to consider only whether an abuse of discretion is demonstrated. *Martin*, 720 P.2d 894; *Hanson v. State*, 590 P.2d 832 (Wyo.1979). Judicial discretion is a nebulous standard which flows from a composite of many factors. *Martin.* We have defined "abuse of discretion," in connection with sentence review, in this way:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Wright v. State*, 670 P.2d 1090, 1092 (Wyo.1983), reh. denied 707 P.2d 153 (1985).

In the *Wright* case, we enumerated four purposes which the imposition of a criminal

sentence serves. Those are: (1) rehabilitation; (2) punishment (specific deterrence and retribution); (3) example to others (general deterrence); and (4) removal from society (protection of the public). Later, the court reaffirmed those purposes in *Robinson v. State*, 678 P.2d 374 (Wyo. 1984), in which we stated that no abuse of discretion would be found if the trial court had considered these purposes and "had applied them to the facts in a reasonable way." *Robinson*, 678 P.2d at 377. The statements made by the sentencing judge with respect to probation relate to these four purposes and demonstrate that they were applied to the facts of this case in a reasonable way. There was no abuse of discretion with respect to the sentences. The court acted within the bounds of reason and certainly could have concluded as it did.

In accordance with sound jurisprudence, we do not consider the question presented by the appellee relating to any error in the instruction that corroboration of the victim's testimony was not required. We perceive an effort to avoid a consideration of that question in a post-conviction petition, but we do not consider such presentations by an appellee in the absence of a cross-appeal, which the State could not bring in this instance. The approach sought by the State would result in an advisory opinion.

The trial court did not abuse its discretion in imposing the sentences it did, and there was sufficient evidence to sustain these convictions. No error occurred in the denial of the appellants' motions for a new trial. Markland's judgment and sentence and Kavanaugh's judgment and sentence are affirmed.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

With the exposure or cynicism of a lifetime in the private practice of law, I would have voted to acquit had I been a juror in this case. Likewise, had I been the trial judge, the severe doubts which are engendered about the quality of the testimony of the principal complainant would have engendered at least serious consideration of a judgment notwithstanding the verdict and more precisely for a new trial. In real world terms, this case accommodates the worst in all results and the totality of human tragedy is predictably not yet individually ordained.

Perjury is an ugly word but only too prevalent a fact as any experienced trial attorney comes to know. In consideration of the motion for a new trial on the basis of W.R.C.P. 60(b) for newly discovered evidence, the complainant, at a minimum, should have been blessed with the undeniable virtue of a cross-examined hearing to explain her newly discovered testimony discrepancy.[1] A validity reference test on the accuracy of her testimony would hardly reach beyond the first digit of a ten numbered scale. The problem with the denied hearing is that the trial judge can empirically not have the faintest knowledge whether or why she may have lied. The "inconsistencies" casually acknowledged by the majority reveal intrinsically that she did not tell the same story twice, more significantly, after trial testimony and then differently in her interview with the officer responsible for the presentence investigation report. Individually, I would believe that the parole officer with the responsibility for acquisition of knowledge for sentencing would be most realistically reliable to reflect the last stated version of the complaint made by the young lady in order to accommodate her clearly designed search for revenge. It is unfortunate that the majority now denies efficacy to her testimony discrepancies even though the last departure never received jury review exposure.

The non-adjudicatorily defined pragmatism adopted by this court for evisceration

---

1. The cross-examination as "'[t]he age-old tool for ferreting out truth'" was most recently emphasized by Justice Stevens in *Perry v. Leeke,* — U.S. —, 109 S.Ct. 594, 601 n. 7, 102 L.Ed. 2d 624 (1989) as quoting at length from *United States v. DiLapi,* 651 F.2d 140, 149–51 (2nd Cir. 1981), cert. denied sub nom. *Ladmer v. United States,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648, cert. denied 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982) and including a quotation from 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974) "calling cross-examination, 'the greatest legal engine ever invented for the discovery of truth.'"

of the newly discovered evidence concept of W.R.C.P. 60(b) accommodates devaluation to a lifeless cipher without substance in remedial character. What is so shocking to the sense of fairness and justice is that the price for substance in the remedy is only the opportunity for a proper hearing with cross-examination and comparison provided. *Story v. State,* 755 P.2d 228 (Wyo. 1988) (Urbigkit, J., specially concurring); *Cutbirth v. State,* 751 P.2d 1257 (Wyo. 1988) (Urbigkit, J., dissenting); *Keser v. State,* 737 P.2d 756 (Wyo.1987) (Urbigkit, J., dissenting). Cf. *Frias v. State,* 722 P.2d 135 (Wyo.1986) and *Matter of Injury to Seevers,* 720 P.2d 899 (Wyo.1986).

Lacking justice delivery system authorship as either a fact finding juror or a trial judge, my unquenchable antipathy to this case is derived from the obscenely extended sentences provided to the accused. I find fault not only in the intrinsic severity, but the maximum life time provision which constituted an abandonment of judicial responsibility to the executive department parole board.

Under the circumstances of this case, even if I were to believe the young lady in totality, which I certainly do not, the sentences are intrusively excessive as related to comparable offenses. There is an excellent place for extended sentences such as life and one such deserving recipient after a short incarceration received $5,000 to speak to the Wyoming State Bar about events which, in venality and immorality, constituted the crime of this century as the Watergate rewards for criminality.

*Wright v. State,* 707 P.2d 153 (Wyo. 1985); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); and reasoned justice and provided due process cannot countenance these sentences. Contended integrity and asserted fairness need not constrain justice and wisdom. Cf. R. Dworkin, Law's Empire (1986).

Consequently, I dissent.